UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MARK EGELSTON SR.,**
on behalf of **M.E.E.,** an infant,

                  **Plaintiff,**

            **v.**                                                      **5:07-cv-0502**
                                                          **(GLS)**

**MICHAEL J. ASTRUE,** Commissioner
of Social Security,

                  **Defendant.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter W. Antonowicz                PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN           KAREN G. FISZER
United States Attorney                           Special Assistant U.S. Attorney
445 Broadway
James T. Foley U.S. Courthouse
Albany, NY 12207-2924

BARBARA L. SPIVAK
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**District Court Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff Mark E. Egelston, Sr., on behalf of his son, M.E.E., challenges the Commissioner of Social Security's denial of supplemental security income (SSI) and seeks judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision and dismisses Egelston's complaint.

### **II. Background**

On November 24, 2003, Egelston filed an application for SSI under the Social Security Act (the Act), alleging his son's disability due to phenylketonuria (PKU).[1] (Tr.[2] at 51-52.) After his application was denied, Egelston requested a hearing before an administrative law judge (ALJ), which was held on November 16, 2005. (Tr. at 43-46, 227-37.) On April 21, 2006, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security

---

[1] PKU is a congenital condition generally caused by the absence or inactivity of the enzyme phenylalanine hydroxylase, which results in excessive levels of phenylalanine and inadequate formation of tyrosine. *See* STEDMAN'S MEDICAL DICTIONARY 1480 (28th ed. 2006); THE MERCK MANUAL 2390 (17th ed. 1999).

[2] "(Tr. )" refers to the page of the Administrative Transcript in this case.

2

Administration Appeals Council's denial of review. (Tr. at 5-7, 12-23.)

Egelston commenced the present action by filing a complaint on May 11, 2007, seeking review of the Commissioner's determination. (Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 9, 13.)

### III. Contentions

Egelston contends that the Commissioner's decision is not supported by substantial evidence. Specifically, he claims that: (1) the ALJ erred in finding that M.E.E.'s impairments did not meet the criteria of Listing 110.07; and (2) the ALJ failed to provide a record-specific examination of the evidence and that his determination is not supported by substantial evidence. (*See* Pl. Br. at 5-11, Dkt. No. 9.) The Commissioner counters that substantial evidence supports the ALJ's decision. (*See* Def. Br. at 10, Dkt. No. 13.)

### IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Pl. Br. at 2-4, Dkt. No. 9; Def. Br. at 2-6, Dkt. No. 13.)

3

## V. Discussion

### A. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. 405(g) is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

### B. Standard for Childhood Disability

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). By regulation, the Commissioner has prescribed a three-step sequential analysis to determine whether a child meets the statutory definition of disability. *See* 20 C.F.R. § 416.924(a); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003). The

first step of the test, which bears similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether a child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *see also Pollard*, 377 F.3d at 189. If so, the child is ineligible for SSI benefits, both statutorily and by regulation. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If a claimant has not engaged in substantial gainful activity, the second step of the test requires the ALJ to determine "whether the child has a 'medically determinable impairment that is severe,' which is defined as an impairment that causes 'more than minimal functional limitations." *Pollard*, 377 F.3d at 189 (quoting 20 C.F.R. § 416.924(c)). Third, if the ALJ finds that the child has an impairment or combination of impairments that are severe, he must then determine whether the impairment meets or medically or functionally equals a disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924(d). If the ALJ finds that an impairment is medically or functionally equivalent to a listed disability, and that the twelve-month durational requirement has been met, the child will be found disabled. *See* 20 C.F.R. § 416.924(d)(1).

In analyzing functionality, an ALJ must consider how a claimant

5

functions in six main areas or "domains." 20 C.F.R. § 416.926a(b)(1); *see also Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 84-85 (2d Cir. 2003). These domains, described as "broad areas of functioning intended to capture all of what a child can or cannot do," include:

>   (i)   Acquiring and using information;
>   (ii)  Attending and completing tasks;
>   (iii) Interacting and relating with others;
>   (iv)  Moving about and manipulating objects;
>   (v)   Caring for [oneself]; and,
>   (vi)  Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). To demonstrate functional equivalence, "the child must exhibit a 'marked' limitation in two of the domains, or an 'extreme' limitation in one domain." *Pollard*, 377 F.3d at 190 (quoting 20 C.F.R. § 416.926a(a)). A limitation is "extreme" if it "interferes *very* seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added). In contrast, a "marked limitation" is one that is "more than moderate but less than extreme," and exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I) (internal quotation marks omitted). "A marked limitation may arise when several activities or

6

functions are impaired, or even when only one is impaired, as long as the degree of limitation [seriously interferes] with the ability to function independently, appropriately, effectively, and on a sustained basis [according to age-appropriate expectations]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). In addition, a marked limitation means a level of functioning that would produce standardized testing scores of at least two, but less than three, standard deviations below the mean.

**C.   Analysis**

**1.   Listing 110.07**

Egelston asserts that PKU should be evaluated under listing 110.07, (*see* Pl. Br. at 6-7, Dkt. No. 9), and that the ALJ erred in finding that M.E.E.'s impairments did not meet or equal § 110.07 for "[m]ultiple body dysfunction due to any confirmed hereditary, congenital, or acquired condition," 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B, § 110.07 (2005). Further, Egelston argues that the ALJ glossed over evidence that would support a finding of an impairment under § 110.07. However, the court is satisfied that the ALJ based his decision on a thorough evaluation of the entire record and is supported by substantial evidence.

To satisfy the requirements of § 110.07, the claimant must have at

7

least one of six listed impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B, § 110.07 (2005). One such impairment is "significant interference with communication due to speech, hearing, or visual impairments as described under criteria in 102.00 and 111.09." *See id.* § 110.07(D). Section 111.09 defines a communication impairment as a "[d]ocumented speech deficit which significantly affects the clarity and content of speech." 20 C.F.R. Pt. 404 Subpt. P, App. 1, Pt. B, § 111.09(A) (2005).

Egelston argues that the evidence demonstrates that M.E.E. suffers from significant limitations in communication skills and that the ALJ focused on areas in which M.E.E.'s abilities were not significantly limited. (*See* Pl. Br. at 7, Dkt. No. 9.) In support of this claim, Egelston cites the results of the Test of Early Language Development Third Edition (TELD-3), which placed M.E.E.'s expressive language ability in the twelfth percentile. (*Id.* at 7 (citing Tr. at 181).) Egelston also cites the Madison-Oneida Board of Cooperative Educational Services (BOCES) report, and particularly, M.E.E.'s scores of one standard deviation below the mean on language comprehension and 1.5 standard deviations below the mean on language production. (*Id.* at 8.)

Egelston's argument is without merit. First, although M.E.E. scored

in the twelfth percentile for expressive language on the TELD-3, his score of 82 was actually just below the average range of 85 to 115, indicating only "slightly delayed" expressive language skills.  (Tr. at 181-182.) Second, the ALJ considered the entire spectrum of evidence, including M.E.E.'s pediatrician's notes that he was crawling and babbling "terrifically," M.E.E.'s mother's subjective assessment, and other sources that reported normal development.  (*See* Tr. at 17-18.)  The ALJ did not, as Egelston claims, focus only on areas in which M.E.E.'s limitations were less than marked.  (*See* Pl. Br. at 8, Dkt. No. 9.)  While the ALJ erred in stating that an audiologist could not provide a medical opinion, (Tr. at 18 (citing 20 C.F.R. § 416.913)), the audiologist's finding of a brief speech delay was not significant enough to warrant a finding of an impairment under § 111.09.

     Moreover, the Appeals Council rightly held that the BOCES report did not provide a basis for changing the ALJ's decision.  (Tr. at 6.)  The Appeals Council is required to consider new evidence only if it relates to the period on or before the ALJ's decision.  *See* 20 C.F.R. § 416.1470(b). In the present case, the BOCES report covers a period after the ALJ's decision and does not appear to relate to the relevant period.  *See id.* Furthermore, even if the BOCES report relates to the relevant period, the

communicative delay is not significant enough to render the ALJ's findings contrary to the weight of evidence already on record. *See* 20 C.F.R. § 416.1470(b). Accordingly, the court is satisfied that the ALJ did not improperly focus his inquiry, and therefore finds that the ALJ's decision was supported by substantial evidence.

In any event, revisions to the Commissioner's listings, effective October 31, 2005, eliminated listing § 110.07. *See* Revised Medical Criteria for Evaluating Impairments That Affect Multiple Body Systems, 70 Fed. Reg. 51,252-01, 51,252 (Aug. 30, 2005) (to be codified at 20 C.F.R. Pt. 404). The Social Security Administration eliminated this listing due to the addition of the functional equivalence provision and the updating of other listings, reasoning that children who formerly qualified under § 110.07 will continue to qualify under the new or updated listings. *See id.* at 51,257. The notes to the revised Listings explain that the ALJ must apply the rules in effect at the time of rendering a decision. *See id.* at 51,254. Therefore, M.E.E., whose ALJ decision was rendered on April 21, 2006, (Tr. at 23), was subject to the revised rules. Accordingly, M.E.E.'s condition could not qualify as a disability under § 110.07 and could only qualify by functional equivalence to a listed impairment.

10

**2.      Functional Equivalence**

Although Egelston does not specifically challenge the ALJ's decision as to functional equivalence, the court finds no error in the ALJ's determination in that regard.  The ALJ properly found that M.E.E. does not have an "extreme" limitation in any domain of functioning, or a "marked" limitation in two or more domains of functioning.  (Tr. at 18-22.)  Based on Egelston's brief, (Pl. Br. at 7, Dkt. No. 9), the only domains in which M.E.E. potentially possesses a limitation are the first, acquiring and using information, and the third, interacting and relating with others.  However, substantial evidence supports the ALJ's conclusion that M.E.E. has neither a marked nor extreme limitation in either domain.  As to acquiring and using information, M.E.E. scored within average range on cognitive development tests.  (Tr. at 178.)  In addition, the Early Language Center (ELC) results indicate that M.E.E.'s communication skills were average or just below average.  (Tr. at 183.)

As to interacting and relating with others, the ELC evaluation described M.E.E. as very social and eager to play with other young children.  (Tr. at 21.)  The ELC findings also note that M.E.E. established good rapport with the examiners and initiated eye contact.  (Tr. at 21.)

Furthermore, M.E.E.'s pediatrician noted "good growth and development" and normal speech for his age. (Tr. at 148.) In addition, an assessment by a State agency medical consultant reports no medically determinable impairment and no more than minimal functional limitations resulting from M.E.E.'s condition. (Tr. at 129.)

In sum, the court is satisfied that the ALJ's finding of no marked or extreme limitation in any domain is supported by substantial evidence. Therefore, the court affirms the ALJ's decision that M.E.E.'s condition is not functionally equivalent to a listed impairment.

### 3. Examination of the Evidence

Egelston argues that both the ALJ and Appeals Council failed to provide an item-specific examination of the documentary evidence. (*See* Pl. Br. at 11, Dkt. No. 9.) This argument is without merit. As stated above, the court finds that the ALJ provided a thorough review of the record, and rendered a decision based on substantial evidence. Furthermore, the court discerns no error in the Appeals Council's denial of review. The Appeals Council will review a case if: (1) there appears to be an abuse of discretion by the ALJ; (2) there is an error of law; (3) the action, findings, or conclusions of the ALJ are not supported by substantial evidence; or (4)

there is a broad policy or procedural issue that may affect the general public interest. *See* 20 C.F.R. § 404.970(a). In determining whether review is warranted, the Appeals Council must evaluate all evidence on the record, including new and material evidence. *See id.* § 404.970(b). Here, the Appeals Council denied review based on its determination that the ALJ's findings were supported by substantial evidence. The court concurs with that determination. Therefore, in the absence of other grounds for reviewing the ALJ's decision, the Appeals Council was not required to provide an item-specific review of the record and its denial of review was not improper.

## 4. Remaining Findings and Conclusions

After careful review of the record, the court finds that the remainder of the ALJ's decision is supported by substantial evidence and is therefore affirmed.

## VI. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Egelston's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order on the parties.

**IT IS SO ORDERED.**

September 30, 2010
Albany, New York

_____
United States District Court Judge